IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| MYRON W. JOHNSON,<br><br>Petitioner,<br><br>vs.<br><br>WARDEN JAMES CRAIG,<br><br>Respondent. | CASE NO. 4:26-cv-687<br><br>DISTRICT JUDGE<br>JOHN R. ADAMS<br><br>MAGISTRATE JUDGE<br>JAMES E. GRIMES JR.<br><br>**REPORT AND RECOMMENDATION** |

Myron Johnson filed a pro se Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. Doc. 1. Johnson is currently in custody at the North Central Correctional Institution serving a sentence of imprisonment of 11 to 16.5 years imposed by the Marion County Court of Common Pleas in *State v. Johnson*, Case No. 22CR0449. The Court referred this matter to a Magistrate Judge under Local Rule 72.2 for the preparation of a Report and Recommendation. For the following reasons, I recommend that the Court deny Johnson's petition.

**Summary of underlying facts**

In habeas corpus proceedings brought under 28 U.S.C. § 2254, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1). "This presumption also applies to the factual findings that [a] state appellate court makes on its review of the state trial record." *Johnson v. Bell*,

525 F.3d 466, 474 (6th Cir. 2008). The petitioner has the burden of rebutting that presumption by clear and convincing evidence. *Id.*

The Ohio Court of Appeals for the Third Appellate District summarized the facts underlying Johnson's conviction following his trial as follows:

> {¶2} This case arises from an August 5, 2022 incident in which a vehicle driven by Johnson was pulled over by a Marion County Sheriff's deputy for an illegal window tint and driving with a suspended license. During the course of the stop, three baggies containing drugs were found in the pants of Johnson's passenger, Kaitlyn Morales ("Morales").
>
> {¶3} On August 17, 2022, the Marion County Grand Jury indicted Johnson on two counts: Count One of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(e), a first-degree felony; and Count Two of tampering with evidence in violation of R.C. 2921.12(A)(1), (B), a third-degree felony. Count One contained a forfeiture specification for $884 in U.S. currency. Johnson entered not guilty pleas at his initial appearance on August 22, 2022.
>
> {¶4} A jury trial was held on December 12, 2023. At trial, Detective Matthew Creps ("Detective Creps"), a member of MARMET, a combined task force that investigates and handles drug-related crimes in Marion County, testified that as part of a drug investigation, he and other members of the task force conducted electronic GPS surveillance on Johnson's vehicle. (Dec. 12, 2023 Tr. at 103, 114). MARMET officers observed Johnson's vehicle travel from Marion County to Detroit, Michigan. (*Id.* at 103-104). According to Detective Creps, the vehicle arrived in Detroit around 1:40 a.m. on August 5, 2022 and left Detroit around 6:00 a.m. that same day. (*Id.* at 115-116). While in Detroit, the vehicle stopped at several locations. (*Id.* at 111). Detective Matt Baldridge ("Detective Baldridge"), another member of the MARMET drug task force, testified that Detroit is a "source city" for drugs in Marion

County. (*Id.* at 128-129). Accordingly, someone leaving Marion County and traveling "right back," in the middle of the night is "absolutely" suspicious to Detective Baldridge. (*Id.* at 129). As the vehicle returned from Detroit, Detective Creps and Detective Baldridge directed that a traffic stop be made on the vehicle. (*Id.* at 120).

{¶5} Deputy David Barron ("Deputy Barron"), a deputy with the Marion County Sheriff's Office, testified that on August 5, 2022, he conducted a traffic stop of a Lexus SUV registered to Johnson on Irvin Shoots Road near the intersection with Prospect-Upper Sandusky Road. (Dec. 12, 2023 Tr. at 134-135). Deputy Barron stated that he pulled the vehicle over after observing that the vehicle's window tint appeared to be darker than the legal threshold. (*Id.*). Additionally, Deputy Barron learned that Johnson, the registered owner of the vehicle, did not have a valid driver's license. (*Id.* at 135).

{¶6} Deputy Barron's body-worn camera footage of the August 5, 2022 traffic stop, State's Exhibit 1, was played in court. (Dec. 12, 2023 Tr. at 138-139). State's Exhibit 1 depicts Deputy Barron approach the dark-colored Lexus and speak to Johnson, who is in the driver's seat and Morales, who is seated in the front passenger seat. (State's Ex. 1). In response to Deputy Barron's inquiry about where they are coming from, Johnson first states that he is coming from his friend's house and then corrects himself by saying "actually I was trying to buy a motor scooter down near this smaller town to see if it was still available." (*Id.*). State's Exhibit 1 depicts Johnson denying multiple times that he was in Detroit or leaving the State of Ohio. (*Id.*). Johnson was placed under arrest pursuant to an outstanding warrant. (*Id.*). Despite his statement that he only had "a couple dollars" on him, officers located over $800 on his person. (*Id.*). Johnson denied having drugs on his person or in the car. (*Id.*).

{¶7} At trial, Morales testified that on August 5, 2022 she traveled to Detroit with Johnson and, on the way home, they were stopped by a Marion County Sheriff's Deputy. (Dec. 12, 2023 Tr. at 88-89). According to Morales, she and Johnson traveled to Detroit to "see family" and "to possibly buy a motorcycle" and that when Johnson went to his family's house she sat in the car for several hours. (*Id.* at 96, 100).

{¶8} Morales stated that as Johnson was arrested, she admitted that there was crack cocaine and fentanyl on her person, stuffed in her pants. (*Id.* at 89-90). When asked how she came to have the crack cocaine, fentanyl, and crack pipe on her person she replied "I grabbed it [and] put it in my pants" "[t]o save my own ass[.]" (*Id.* at 90, 96). Morales explained that it was a "natural reaction" and that she was "just trying to hide it." (*Id.* at 90). Morales denied that the drugs were hers and stated that she had "no clue" who the drugs belonged to. (*Id.*). She testified that the drugs had been located in the vehicle's console and that she had no knowledge of how they came to be there. (*Id.*). Morales denied that Johnson directed her to take the drugs from the console and hide them on her person. (*Id.* at 90-91).

{¶9} Detective Creps testified that during the traffic stop, he had a conversation with Johnson in which Johnson denied traveling to Detroit. (Dec. 12, 2023 Tr. at 105). Detective Creps recounted that Johnson told him that he was traveling to look at a scooter in another town. (*Id.*). Detective Creps testified that Johnson told him that the $884 found on his person was going to be used to purchase the scooter. (*Id.* at 105, 111). Further, Johnson denied to Detective Creps that he had any knowledge of the drugs found on Morales. (*Id.* at 105). However, according to Detective Baldridge, although Johnson did not directly admit that the drugs were his, he made a statement similar to "don't charge the girl" or "you can't put that on the girl." (*Id.* at 128).

> {¶10} At the conclusion of the trial, the jury found Johnson guilty of Count One (possession of cocaine) and not guilty of Count Two (tampering with evidence). The trial court accepted the jury's verdicts and continued the matter for sentencing.

*State v. Johnson*, 2025-Ohio-713, 2025 WL 676357, at *1–2 (Ohio Ct. App. March 3, 2025).

**Procedural background**

*Sentencing*

In December 2023, shortly before sentencing, Johnson filed a pro se motion for mistrial based on alleged juror misconduct. Doc. 8-1, at 7 (Exhibit 4). Johnson claimed that one of the jurors lied when he told the trial court that he did not know Johnson. *Id.* The trial court denied this motion at the sentencing hearing in January 2024. *Id.* at 9 (Exhibit 5). The court then sentenced Johnson to an indefinite sentence of a minimum of 11 years to a maximum of 16.5 years in prison. *Id.* at 10. The court ordered the sentence to run consecutively to a sentence imposed on Johnson by the Marion County Common Pleas Court in another case. *Id.*

*Direct appeal*

In January 2024, Johnson, through new counsel, appealed to the Ohio court of appeals. Doc. 8-1, at 13. In his brief, he raised the following two assignments of error:

> 1. Because the State failed to establish Johnson's knowledge and possession, as well as venue beyond a reasonable doubt, Johnson's conviction

should be reversed. The evidence also manifestly weighted against convicting Johnson.

2. The trial court reversibly erred in permitting the detective to testify regarding Morales's prior inconsistent statement that Johnson handed her the drugs and told her to stuff them. These statements were inadmissible hearsay, were not permitted by Evid.R. 613 and could not be used for the truth of the matter asserted. Thus, Johnson's conviction should be reversed.[1]

Doc. 8-1, at 22. In March 2025, the Ohio court of appeals affirmed the trial court's judgment. *Johnson*, 2025 WL 676357.

Johnson did not timely appeal. In May 2025, he filed in the Ohio Supreme Court a pro se motion for leave to file delayed appeal and an untimely notice of appeal. Doc. 8-1, at 74, 103 (Exhibits 10 & 11). The Ohio Supreme Court granted Johnson's motion for leave. *Id.* at 105 (Exhibit 12). In his memorandum in support of jurisdiction, Johnson raised three propositions of law:

1. Constructive possession requires a showing of conscious awareness of the subject object pursuant to State v. Hankerson, 70 Ohio St. 2d 87.

2. Extrinsic evidence of a prior inconsistent statement must be offered into evidence upon an established foundation pursuant to State v. Theuring (1988), 46 Ohio App. 3d 152.

3. A prior inconsistent statement cannot be proven by extrinsic evidence if such statements relate to collateral matter.

[1] Unless noted, Johnson's assignments of error, propositions of law, and grounds for relief are reproduced as written.

Doc. 8-1, at 107 (Exhibit 13). In October 2025, the Ohio Supreme Court declined under Rule 7.08(B)(4) of its rules of practice to accept jurisdiction. *Id.* at 118 (Exhibit 14).

*Ohio Appellate Rule 26(B) Application to reopen direct appeal*

Meanwhile, in May 2025, Johnson filed in the Ohio court of appeals a pro se Ohio Appellate Rule 26(B) application to reopen his direct appeal.[2] Doc. 8-1, at 119 (Exhibit 15). In his application, Johnson alleged that his appellate counsel was ineffective for failing to raise the following assignments of error on direct review:

> 1. The state committed reversible error when the prosecution committed improper vouching during his opening and closing arguments in violation of Johnson's Due Process rights pursuant to the 14th amendment of the United States Constitution.
>
> 2. Trial counsel was ineffective when he failed to object to the State's use of improper vouching for a government witness in violation of Johnson's 6th and 14th amendment Constitutional Rights.
>
> 3. The State committed reversible error when it presented evidence to the jury that Johnson was not charged with in violation of Johnson's 6th and 14th amendment Due Process rights to a fair trial and against Evidence Rule 403(A).
>
> 4. Trial court abused its discretion when it permitted the introduction of evidence of a crime that Johnson was not charged with, violating Johnson's right to a fair trial and his rights under the 6th and 14th amendments of the United States Constitution.

[2] A Rule 26(B) application to reopen is the method to raise ineffective assistance of appellate counsel. *See* Ohio App. R. 26(B)(1).

> 5. Trial counsel was ineffective for failing to object to the introduction of evidence that Johnson was not charged with in violation of Johnson's 6th and 14th amendment right to the effective assistance of counsel.
>
> 6. Prosecutorial misconduct where the State misrepresented facts to the jury in order to gain a conviction in violation of Johnson's right to a fair trial under the 6th and 14th amendment of the United States constitution.
>
> 7. Trial court erred to the prejudice of Johnson when it denied the motion for mistrial and allowed a jury member to sit on a jury who had previous called the police on Johnson in violation of Johnson's right to a fair trial, 6th and 14th Amendment to the constitution.

Doc. 8-1, at 121–23 (Exhibit 15). In July 2025, the Ohio court of appeals denied Johnson's application to reopen because Johnson had not "satisfied the threshold showing required under App.R. 26(B)." *Id.* at 138 (Exhibit 16). The court found that there was "no legal support" for Johnson's argument that appellate counsel should have raised the seven issues on direct appeal and that Johnson's "references to the record do not support the viability of these issues as potential error." *Id.*

Johnson timely appealed to the Ohio Supreme Court. Doc. 8-1, at 140 (Exhibit 17). In his memorandum in support of jurisdiction, Johnson set forth the following proposition of law:

> The appeals court erred in violation of Ohio Supreme Court precedent State v. Leyh, 2022-Ohio-292, when it denied Johnson's appellate rule 26(B) application by claiming he did not show a genuine issue that his appellate counsel was ineffective.

*Id.* at 144 (Exhibit 18). In October 2025, the Ohio Supreme Court declined under Rule 7.08(B)(4) of its rules of practice to accept jurisdiction. *Id.* at 159 (Exhibit 19).

*Federal habeas proceedings*

In March 2026, Johnson filed a petition for writ of habeas corpus. Doc. 1. He raises the following eight grounds for relief:

> **Ground one:** Because the State failed to establish Johnson's knowledge and possession of the drugs beyond a reasonable doubt, Johnson's conviction should be reversed. Insufficient evidence also weighed against convicting Johnson.
>
> **Ground two:** Johnson was denied his Due Process and Sixth Amendment Constitutional right to a fair trial [in permitting a detective to testify regarding Morales's prior inconsistent statement that Johnson handed her the drugs and told her to stuff them].
>
> **Ground three:** Johnson was denied his Due Process rights when the prosecutor committed improper vouching during his opening and closing statements.
>
> **Ground four:** Johnson received ineffective assistance of counsel when trial counsel failed to object to the State's use of improper vouching for a government witness.
>
> **Ground five:** Johnson was denied his Sixth and 14th Amendment Due Process rights to a fair trial when the jury was presented with evidence of a crime that was not charged.
>
> **Ground six:** Johnson received ineffective assistance of counsel when trial counsel failed to object to the introduction of evidence of a crime that

> was not charged, thus violating his Sixth and 14th Amendment Due Process rights to a fair trial.
>
> **Ground seven:** The State violated Johnson's Sixth and 14th Amendment Due Process rights to a fair trial when the prosecutor committed prosecutorial misconduct by misrepresenting facts to the jury.
>
> **Ground eight:** The State violated Johnson's Sixth and 14th Amendment due process rights to a fair trial when the court denied his motion for mistrial and allowed a biased jury member to be empaneled.

Doc. 1, at 5–17; Doc. 1-1, at 5–18. The Warden filed a return, Doc. 8, and Johnson filed a traverse, Doc. 11.

## Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104–132, 110 Stat. 1214, petitioners must meet certain procedural requirements to have their claims reviewed in federal court. *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006). "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim." *Daniels v. United States*, 532 U.S. 374, 381 (2001). Although procedural default is sometimes confused with exhaustion, exhaustion and procedural default are distinct concepts. *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006). Failure to exhaust applies when state remedies are "still available at the time of the federal petition." *Id.* (quoting *Engle v. Isaac*, 456 U.S. 107, 125 n.28 (1982)). But when state court remedies are no longer available, procedural default rather than exhaustion applies. *Id.*

*Exhaustion*

A federal court may not grant a writ of habeas corpus unless the petitioner has exhausted all available remedies in state court. 28 U.S.C. § 2254(b)(1)(A). A state defendant with federal constitutional claims must fairly present those claims to the state courts before raising them in a federal habeas corpus action. 28 U.S.C. § 2254(b),(c); *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971); *see also Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006) ("Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts") (quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003)). A constitutional claim for relief must be presented to the state's highest court to satisfy the fair presentation requirement. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845–48 (1999); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). And a habeas petitioner must present both the factual and legal underpinnings of the claims to the state courts. *McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). This means that the "petitioner must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).

*Procedural default*

Procedural default may occur in two ways. *Williams*, 460 F.3d at 806. First, a petitioner procedurally defaults a claim by failing "to comply with state

procedural rules in presenting [the] claim to the appropriate state court." *Id.* In *Maupin v. Smith*, the Sixth Circuit directed courts to consider four factors when determining whether a claim is barred on habeas corpus review due to a petitioner's failure to comply with a state procedural rule: whether (1) there is a state procedural rule applicable to the petitioner's claim and whether the petitioner failed to comply with that rule; (2) the state court enforced the procedural rule; (3) the state procedural rule is an adequate and independent state ground on which the state can foreclose review of the federal constitutional claim; and (4) the petitioner can demonstrate cause for failing to follow the rule and actual prejudice by the alleged constitutional error. 785 F.2d 135, 138 (6th Cir. 1986); *see also Williams*, 460 F.3d at 806 ("If, due to the petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.") (citing *Maupin*, 785 F.2d at 138).

Second, "a petitioner may procedurally default a claim by failing to raise a claim in state court, and pursue that claim through the state's 'ordinary appellate review procedures.'" *Williams*, 460 F.3d at 806 (citing *O'Sullivan*, 526 U.S. at 847). "If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, the claim is procedurally defaulted." *Id.* While the exhaustion requirement is satisfied because there are no longer any state remedies available to the petitioner, *see Coleman v.*

*Thompson*, 501 U.S. 722, 732 (1991), the petitioner's failure to have the federal claims considered in the state courts constitutes a procedural default of those claims that bars federal court review, *Williams*, 460 F.3d at 806.

To overcome a procedural bar, petitioners must show cause for the default and actual prejudice that resulted from the alleged violation of federal law that forms the basis of their challenge, or that there will be a fundamental miscarriage of justice if the claims are not considered. *Coleman*, 501 U.S. at 750.

*Merits review*

If a state's courts adjudicated the merits of a claim, a habeas petitioner may obtain habeas relief under 28 U.S.C. § 2254, if the petitioner can establish one of two predicates. To establish the first predicate, the petitioner "must identify a 'clearly established' principle of 'Federal law' that" has been established by a holding of the Supreme Court. *Fields v. Jordan*, 86 F.4th 218, 231 (6th Cir. 2023) (en banc); *see* 28 U.S.C. § 2254(d)(1). The petitioner must then show that state's court's adjudication "was *contrary to*," or "involved an *unreasonable application* of" that "clearly established" precedent. 28 U.S.C. § 2254(d)(1) (emphasis added); *see Fields*, 86 F.4th at 232.

To establish the second predicate, the petitioner must show that the state's court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or" based on "a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A]n 'unreasonable application of'" the Court's holdings is one that is "'objectively unreasonable,' not merely wrong; even 'clear error' will not suffice." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)).

"[A] 'clearly established' principle of 'Federal law' refers to the "holdings," not "dicta," of the Supreme Court's decisions. *Fields*, 86 F.4th at 231 (quoting *White*, 572 U.S. at 419). A state court is not required to cite Supreme Court precedent or reflect an "awareness" of Supreme Court cases, "so long as neither the reasoning nor the result of the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see White*, 572 U.S. at 426 ("Section 2254(d)(1) provides a remedy for

instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error.").

In determining whether the state court's decision involved an unreasonable application of law, the Court uses an objective standard. *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

**Discussion**

*Ground one fails on the merits*

In ground one, Johnson argues that his conviction was not supported by sufficient evidence. Doc. 1, at 5; Doc. 1-1, at 5. The Warden contends that ground one fails on the merits. Doc. 8, at 20.

When reviewing a claim that a petitioner's conviction is not supported by sufficient evidence, the court asks "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Cavazos v. Smith*, 565 U.S. 1, 7 (2011). The court defers to the trier-of-fact's determination. *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). The standard is not whether the trier-of-fact made the correct guilt or innocence determination, but whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993). The court does "not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute [its] judgment for that of the [fact-finder]." *Brown*, 567 F.3d at 205; *see also Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003). "Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence to exclude every reasonable hypothesis except that of guilt." *Johnson v. Coyle*, 200 F.3d 987, 992 (6th Cir. 2000) (internal quotations and citations omitted); *see also Durr v. Mitchell*, 487 F.3d 423, 449 (6th Cir. 2007) ("circumstantial evidence is entitled to equal weight as direct evidence").

On federal habeas review, an additional layer of deference applies. *Brown*, 567 F.3d at 205; *see Coleman v. Johnson*, 566 U.S. 650, 651 (2012). So even if this Court were to conclude that a rational trier-of-fact could not have found Johnson guilty beyond a reasonable doubt, the Court "must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Brown*, 567 F.3d at 205; *see also White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009).

The Ohio court of appeals first recited the sufficiency-of-the-evidence standard that it applied to Johnson's claim:

> {¶15} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

*Johnson*, 2025 WL 676357, at *3. This is the proper sufficiency standard. *See Jackson*, 443 U.S. at 319. The Ohio court of appeals then discussed Johnson's sufficiency claim as follows:

> *Johnson's Offense*
>
> {¶17} We first review the sufficiency of the evidence supporting Johnson's conviction. Johnson was convicted of possession of cocaine in violation of R.C. 2925.11(A), which provides, "[n]o person shall knowingly obtain, posses, or use a controlled substance or a controlled substance analog." "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance is found." R.C. 2925.01(K).

*Analysis: Sufficiency of Evidence*

{¶18} On appeal, Johnson argues that the State's evidence was deficient in two regards: First, he argues that the State failed to establish venue. Second, Johnson argues that there is insufficient evidence that he had knowledge of the drugs located on Morales's person.

{¶19} We first address Johnson's argument that the State did not provide sufficient evidence to establish venue. "Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant." *State v. Headley*, 6 Ohio St.3d 475, 477 (1983). "In the prosecution of a criminal case, it is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment." *State v. Dickerson*, 77 Ohio St. 34 (1907), syllabus. *See also State v. May*, 2015-Ohio-4275, ¶ 22 (8th Dist.).

{¶20} Johnson argues that the State failed to provide sufficient evidence that the traffic stop at issue occurred in Marion County, Ohio. Specifically, Johnson argues that "[t]he State did not ask any officer ... if the street that Johnson was pulled over on was in Marion County, Ohio." (Appellant's Brief at 6). However, a review of the record directly rebuts Johnson's claim.

{¶21} Detective Creps, a law enforcement officer with the City of Marion, who was on the scene of the traffic stop, testified as follows:

> [State]: Were you working with MARMET on August 5, 2022?
> [Det. Creps]: Yes, sir.
> [State]: And were you involved with a traffic stop on a vehicle on Irvin Shoots Road, here in Marion County, Ohio?
> [Det. Creps]: Yes, sir, I was.

(Dec. 12, 2023 Tr. at 101, 103). Detective Creps then detailed his involvement in the instant case, including conducting electronic surveillance on Johnson's vehicle as Johnson traveled to Detroit and back. (*Id.* at 103-104). Additionally, Detective Creps and Detective Baldridge, two law enforcement officers with the City of Marion Police Department testified that the case was the result of their work with MARMET, a "combined task force that investigates and handles drugs cases in Marion County." (*Id.* at 102). Furthermore, Deputy Barron, a deputy with the Marion County Sheriff's Office, who testified that his duties are to respond to calls for services "within Marion County," effectuated the traffic stop. (*Id.* at 133-134).

{¶22} Accordingly, we find that the evidence adduced at trial, when viewed in a light most favorable to the State, was sufficient to establish venue.

{¶23} We next address Johnson's argument that the State failed to establish Johnson's knowing possession of the drugs found on Morales. He challenges the State's evidence that he knowingly possessed the drugs in light of the evidence that the only illicit drugs located in the vehicle were located in Morales's pants. Johnson contends, as detailed in his second assignment of error, that the testimony he gave Morales the drugs and told her to hide them was inadmissible and, therefore, the State was not able to establish that he had knowledge of the drugs.

{¶24} "The issue of whether a person charged with drug possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *State v. Brooks*, 2012-Ohio-5235, ¶ 45 (3d Dist.), quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998). The Ohio Revised Code defines "knowingly" as follows:

> A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably

> be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901.22(B).

{¶25} "Possession of drugs can be either actual or constructive." *State v. Bustamante*, 2013-Ohio-4975, ¶ 25 (3d Dist.). "A person has 'actual possession' of an item if the item is within his immediate physical possession." *State v. Williams*, 2004-Ohio-1130, ¶ 23 (4th Dist.). "A person has 'constructive possession' if he is able to exercise dominion or control over an item, even if the individual does not have immediate physical possession of it." *Bustamante* at ¶ 25. "For constructive possession to exist, '[i]t must also be shown that the person was conscious of the presence of the object.'" *Id.*, quoting *State v. Hankerson*, 70 Ohio St.2d 87, 91 (1982). "'Joint possession ... exists when two or more persons together have the ability to control an object, exclusive of others.'" *State v. Hudson*, 2018-Ohio-133, ¶ 57 (8th Dist.), quoting *State v. Smith*, 2001 WL 563077, *3 (8th Dist. May 24, 2001).

{¶26} "[T]he State may prove the existence of the various elements of constructive possession of contraband by circumstantial evidence alone." *Bustamante* at ¶ 25. "Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *State v. Voll*, 2012-Ohio-3900, ¶ 19 (3d Dist.). "Inherent in a finding of

constructive possession is that the defendant was conscious of the item and therefore had knowledge of it." *State v. Alexander*, 2009-Ohio-597, ¶ 24, citing *Hankerson* at syllabus and *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976).

{¶27} The crux of Johnson's argument that he did not knowingly possess the drugs located on Morales's person is his assertion that Detective Baldridge's testimony that Morales told him that "when [Johnson and Morales] where about to get stopped, that [Johnson] had handed her the drugs and told her to stuff them down her pants" was inadmissible hearsay evidence. (Dec. 12, 2023 Tr. at 124).

{¶28} First, we note that the testimony that Johnson references relates directly to the tampering-with-evidence charge, of which Johnson was acquitted, though a statement that Johnson directed Morales to hide the drugs is, indeed, evidence that Johnson exercised dominion and control over the drugs. However, the State argues that the inconsistent statement was introduced to impeach Morales after she denied that Johnson told her to hide the drugs and was not offered for the truth of the statement. Furthermore, even if we assume (without deciding) that the testimony that Johnson directed Morales to conceal the drugs is inadmissible and exclude the statement from consideration, the evidence presented at trial was sufficient for the jury to find that Johnson had knowledge of the drugs found on Morales.

{¶29} Morales testified that the drugs had been located in the vehicle's console and that she did not know where the drugs had come from or whom the drugs belonged to but that she concealed the drugs in her pants when the vehicle was pulled over to "save [her] own ass." (Dec. 12, 2023 Tr. at 90). Morales further admitted that she and Johnson drove in Johnson's vehicle to Detroit, which as multiple law enforcement officers attested, is a source city for Marion County. Furthermore, the trip to and from Detroit occurred in the middle of the

night, which Detective Baldridge testified was "suspicious." (*Id.* at 129). Importantly, in State's Exhibit 1, Johnson repeatedly denied traveling to Detroit. (State's Ex. 1). Additionally, Detective Baldridge testified that although Johnson did not directly admit the drugs belonged to him, he inferred as much when he made the statement "you can't put that on the girl." (*Id.* at 128).

{¶30} "A jury can make reasonable inferences from the evidence." *State v. Knight*, 2016-Ohio-8134, ¶ 26 (10th Dist.). "'It is permissible for a jury to draw inferences from the facts presented to them.'" *Id.*, quoting *State v. Sanders*, 1998 WL 78787, *3 (6th Dist. Feb. 13, 1998), citing *State v. Palmer*, 80 Ohio St.3d 543, 561 (1997). There are numerous inferences that can be made from the State's evidence. For example, Morales's statement that the drugs were located in the console supports an inference that Johnson, who was the driver, only other occupant, and owner of the vehicle had actual knowledge of the drugs and had constructive control over the drugs. Likewise, Johnson's trip to Detroit and the $884 found on his person, both of which he lied about to law enforcement, leads to an inference that Johnson was aware of the presence of the drugs and had dominion and control over them, even if law enforcement found them on Morales's person. *See State v. Frye*, 2018-Ohio-894, ¶ 53 (3d Dist.), quoting *State v. Grundy*, 1998 WL 852844, *10 (9th Dist. Dec. 9, 1998) ("'It is also irrelevant that he did not admit that the cocaine was his. Sufficient evidence existed that Defendant has exercised dominion and control over the cocaine, and was in constructive possession of the substance.'").

{¶31} Thus, when examining the evidence in a light most favorable to the State, we find that a rational trier of fact could have found that Johnson had knowledge of and possession of the drugs found on Morales's person. *See State v. Williamson*, 2017-Ohio-7098, ¶ 15, 58 (2d Dist.) (sufficient evidence supported the conclusion that the defendant knowingly possessed drugs where officers discovered

> a bag of heroin capsules on the passenger seat of the vehicle and a baggie of cocaine "in the middle console of the car, in the ashtray, just below the radio [both of which] would have been easily accessible to the driver.").

*Johnson*, 2025 WL 676357, at *3–6.

Johnson asserts that his "fundamental right to proper venue was violated." Doc. 1-1 at 5. He offers no explanation to support this statement. No matter. A challenge to venue raises a question of state law that is not cognizable on federal habeas review. *See Armstrong v. Wainwright*, No. 1:18-cv-1133, 2018 WL 8050904, at *10 (N.D. Ohio Dec. 20, 2018) (a venue claim is not cognizable on federal habeas review) (collecting cases), *report and recommendation adopted*, 2019 WL 1670994 (N.D. Ohio Apr. 17, 2019), *certificate of appealability denied*, No. 19-3446, 2019 WL 5874623, at *2 (6th Cir. Oct. 8, 2019) ("challenges to the trial court's jurisdiction and venue … involve state law matters that are not cognizable on federal habeas review"); *Billman v. Warden, Corr. Reception Ctr.*, No. 2:14-cv-1910, 2016 WL 931262, at *7 (S.D. Ohio Mar. 11, 2016), *report and recommendation adopted*, 2016 WL 3365407 (S.D. Ohio June 17, 2016).

Next, Johnson argues that the State never proved that he had constructive possession over the drugs that Morales had in her pants. Doc. 1-1, at 7. He submits that the State "failed to run any test on the console, and therefore, never proved the drugs were anywhere else besides hidden on Morales' person." *Id.* But Morales herself testified that the drugs were in the

console, Doc. 9-1, at 90, as the Ohio court of appeals observed, *Johnson*, 2025 WL 676357, at *5. Morales's testimony is sufficient evidence that the drugs were in the console of the car owned and operated by Johnson, who was the only other occupant of the car. *See United States v. Terry*, 362 F.2d 914, 916 (6th Cir. 1966) ("The testimony of the prosecuting witness, if believed by the jury, is sufficient to support a verdict of guilty."); *see Johnson*, 200 F.3d at 992 ("Circumstantial evidence alone is sufficient to support a conviction").

Johnson cites *United States v. Catching*, 786 F. App'x 535, 538 (6th Cir. 2019), in support of his position. Doc. 1-1, at 7–8. But *Catching* is not on point. In *Catching*, the Sixth Circuit vacated a district court's supervised-release revocation that was based on a finding that under Kentucky law, the defendant possessed drugs. 786 F. App'x at 543. Twice the police stopped Catching while he was in a rental car—he did not own the car—in which drugs were found. *Id.* at 542. During one stop, Catching was driving the car; during the other stop, Catching was a passenger. *Id.* And there was "no testimony or evidence offered to prove that Catching was the person who rented the [car]." *Id.* The court therefore found that there was insufficient evidence that Catching actually or constructively possessed the drugs found in the rental car. *Id.* at 540–42.

Here, in contrast, Johnson owned the car in which the drugs were found and he was driving it. Moreover, *Catching* is not a United States Supreme Court case, and the Sixth Circuit did not apply AEDPA deference to a state

court's sufficiency-of-the-evidence decision, and instead reviewed it de novo. 786 F. App'x at 539

Ground one fails on the merits.

*Ground two is procedurally defaulted*

In ground two, Johnson argues that his due process rights were violated when the trial court permitted a detective to testify about Morales's prior inconsistent statement. Doc. 1-1, at 8. The Warden asserts that Johnson procedurally defaulted this claim because he failed to present it to the Ohio courts as a federal constitutional claim. Doc. 8, at 11.

"Before seeking a federal writ of habeas corpus, a state prisoner must … giv[e] the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (internal quotation marks and citations omitted). To do so, the prisoner must "fairly present" the claim to the state court, "thereby alerting that court to the federal nature of the claim." *Id.*; *Koontz*, 731 F.2d at 368 (a habeas petitioner "must present his claim to the state courts as a federal constitutional issue—not merely as an issue arising under state law").

In his briefs to the Ohio courts, Johnson argued that the trial court erroneously admitted hearsay evidence in violation of Ohio Rule of Evidence 613. Doc. 8-1, at 22, 29–30, 107, 113–16. He did not allege that this error amounted to a due process violation or any other constitutional violation. *See* Doc. 8-1, at 22, 29–30, 107, 113–16. Johnson therefore failed to fairly present

this issue to the Ohio courts as a federal constitutional claim, and it is procedurally defaulted. *See Baldwin*, 541 U.S. at 29 (a prisoner must "fairly present" a federal claim to the state court to "alert[] that court to the federal nature of the claim.").

Johnson argues that Ohio Rule of Evidence 613 is "almost identical" to Federal Rules of Evidence 613. Doc. 1-1, at 8; Doc. 11, at 8–9. And so, Johnson reasons, he did not have to cite the federal rules of evidence or the due process clause to alert the State courts to the federal nature of his claim. Doc. 11, at 9. But the Federal Rules of Evidence don't apply in state court. *See Norris v. Schotten*, 146 F.3d 314, 335 (6th Cir. 1998). Johnson therefore hasn't explained why he believes that the Ohio courts should have guessed that he was also alleging a federal rule violation, or that doing so would have alerted the Ohio courts to a federal constitutional issue that Johnson had not referenced. *See Baldwin*, 541 U.S. at 29; *McMeans*, 228 F.3d at 681 (holding that a claim is only considered *fairly presented* when the petitioner asserts both the factual and legal bases for that claim to the state courts).

For cause to excuse his procedural default, Johnson generally argues that appellate counsel was ineffective for failing to raise "numerous meritorious issues" on direct appeal. Doc. 11, at 4. Although Johnson filed an Ohio Rule 26(B) Application to reopen, citing seven reasons why appellate counsel was ineffective, he did not list the failure to raise ground two as a federal constitutional issue as a reason that appellate counsel was ineffective.

Doc. 8-1, at 121–26. So he has procedurally defaulted any such ineffectiveness claim regarding appellate counsel, which, therefore, cannot constitute cause to excuse his procedural default. *See Edwards v. Carpenter*, 529 U.S. 446, 451–53 (2000) (holding that ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective assistance-of-appellate-counsel claim is not itself procedurally defaulted).

Finally, Johnson has not shown that he suffered a fundamental miscarriage of justice such that his is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). A claim of actual innocence "requires the petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Johnson has not presented such evidence. Ground two is procedurally defaulted.

*Grounds three through seven are procedurally defaulted*

In ground three, Johnson alleges that the prosecutor improperly vouched for a witness during opening and closing statements. Doc. 1-1, at 10. In ground four, he alleges that trial counsel was ineffective for not objecting to the prosecutor's improper vouching. *Id.* at 12. In ground five, Johnson alleges that his Sixth and Fourteenth Amendment rights were violated when the jury

was presented with evidence of a crime he hadn't been charged with, *id.* at 13, and in ground six he alleges that trial counsel was ineffective for not objecting to the introduction of this evidence, *id.* at 14. In ground seven, Johnson argues that the prosecutor committed misconduct when he misrepresented facts to the jury. *Id.* at 16. The Warden argues that all of these grounds are procedurally defaulted. Doc. 8, at 12–13.

Grounds three through seven are based on the trial court record. All of them should have been raised on direct appeal. *See Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001) ("Ohio courts have consistently held that claims that can be adjudicated based on facts in the record can only be presented on direct appeal") (citing *State v. Lentz*, 639 N.E.2d 784, 785 (Ohio 1994)). But Johnson did not raise them on direct appeal. Doc. 8-1, at 22. So Johnson has procedurally defaulted grounds three through seven. *See Buell*, 274 F.3d at 349 ("Th[e Sixth Circuit] has held that this [direct-appeal] rule is regularly and consistently applied by Ohio courts as required by the four-part *Maupin* test.").

For cause to excuse his procedural default, Johnson cites ineffective assistance of appellate counsel for not raising these claims on direct appeal. Doc. 11, at 6. Johnson raised in his Ohio Rule 26(B) Application grounds three through seven as reasons appellate counsel was ineffective. Doc. 8-1, at 122–23. But he didn't raise these claims when he appealed to the Ohio Supreme Court. *Id.* at 144 (Johnson's Ohio Supreme Court brief arguing only that the Ohio court of appeals erred because it failed to follow the two-step Rule 26(B)

procedure discussed in *State v. Leyh*, 185 N.E.3d 1075 (Ohio 2022)). So Johnson procedurally defaulted any ineffective assistance of appellate counsel claims that could serve as cause to excuse his procedural default. *See O'Sullivan*, 526 U.S. at 845 (a petitioner must present a claim to the state appellate court and the state supreme court for discretionary review or it is procedurally defaulted). And Johnson hasn't alleged cause to excuse *this* procedural default. *See Edwards*, 529 U.S. at 451–53 (holding that ineffective assistance of appellate counsel can serve as cause to excuse a procedural default, but only if the ineffective assistance of appellate counsel claim is not itself procedurally defaulted).

Finally, to the extent that ground four could be construed as raising a stand-alone ineffective-assistance-of-appellate-counsel claim, *see* Doc. 1-1, at 12, this claim would be procedurally defaulted for the same reason just explained—Johnson failed to raise this claim when he appealed to the Ohio Supreme Court the denial of his Ohio Appellate Rule 26(B) Application to reopen, *see O'Sullivan*, 526 U.S. at 845, and he hasn't alleged cause to excuse the procedural default.

*Ground eight is procedurally defaulted*

In ground eight, Johnson argues that the trial court erred when it denied his motion for mistrial, which was based on Johnson's claims that (1) one of the jurors lied to the court when the juror said that he did not know Johnson and (2) the juror was biased. Doc. 1-1, at 18; Doc. 8-1, at 7, 9. In his petition,

Johnson explains that during voir dire, he "informed counsel … that he believe[d] that he knew that particular juror but could not be for certain at the time." Doc. 1-1, at 18. Johnson says that he told his counsel that he "thinks he purchased a late model BMW automobile from that juror and that he still had the car and the car title as proof." *Id.* Johnson submits that "after the trial," he "found out for certain … that this juror was in fact[] the individual whom he had purchased a vehicle from and also had once called law enforcement on him for sitting in his niece's home—with permission." *Id.* The Warden argues that ground eight is procedurally defaulted. Doc. 8, at 13.

Ground eight is procedurally defaulted for all of the reasons grounds three through seven are procedurally defaulted: it is based on the trial court record, *see* Doc. 8-1, at 7 (Johnson's motion for mistrial); it therefore should have been raised on direct appeal; Johnson did not raise it on direct appeal; and Johnson has not shown cause to excuse his procedural default.

Notably, Johnson alleges in ground eight that *the trial court* committed an error when it denied his motion for a mistrial based on a biased juror. Doc. 1, at 17; Doc. 1-1, at 18. Johnson has not presented ground eight as an ineffective-assistance-of-trial-counsel claim, even though in his petition brief Johnson complains, among other things, that trial counsel "failed to investigate this possibility [of a biased juror] or simply strike [the juror] for cause" and that, "[a]s a result [of] the trial counsel's incompetence, … a biased juror [was] seated on the panel." Doc. 1-1, at 18.

Even if, for the sake of argument, the Court were to liberally construe ground eight as an ineffective-assistance-of-trial-counsel claim, which the Court is not required to do,[3] any such claim would be procedurally defaulted.

First, any such claim is based on the trial court record and should have been raised on direct appeal. Johnson raised the biased-juror claim in his motion for mistrial, which the trial court denied at the sentencing hearing. Doc. 8-1, at 7–9. He admits that the Ohio court of appeals could have "reviewed the transcripts from voir dire" to decide the issue. Doc. 1-1, at 19. And yet Johnson did not raise on direct appeal an ineffective-assistance claim regarding counsel's actions during voir dire. As with grounds three through seven, he has not shown cause for the procedural default. So any ineffective-assistance claim in ground eight would be procedurally defaulted. *See Buell*, 274 F.3d at 349.

To the extent that any ineffective-assistance claim in ground eight could be said to rely on evidence outside the trial court record, any such claim would be procedurally defaulted for a different reason. An ineffective-assistance claim based on matters outside the record must be raised in a state post-conviction petition. *See Hill v. Mitchell*, 842 F.3d 910, 936 (6th Cir. 2016) (citing *State v. Cole*, 443 N.E.2d 169, 171 (Ohio 1982)). Johnson did not file a

---

[3] "While the court is required to liberally and actively construe the Petition, the court is not required to construct claims on Petitioner's behalf." *Palmer v. Wainwright*, No. 1:19-cv-102, 2022 WL 3575349, at *6 (N.D. Ohio Aug. 19, 2022) (quoting *Roberts v. Wainwright*, No. 1:18-cv-2228, 2019 WL 2341200, at *2 (N.D. Ohio June 3, 2019) (in turn citing *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001)).

post-conviction petition, and state law bars him from filing one now. *See* Ohio Rev. Code § 2953.21(A)(2)(a) (a post-conviction petition must be filed in the trial court 365 days after the transcript is filed on direct appeal); *see* Doc. 8-1, at 170 (Ohio court of appeals docket showing that Johnson's transcript was filed on direct appeal in March 2024). And Johnson hasn't shown that he meets any of the requirements in Ohio Revised Code § 2953.23(A)(1) for filing a late petition. It would therefore be futile for Johnson to return to state court to attempt to file a late post-conviction petition based on any purported ineffective-counsel claim in ground eight. *See, e.g., Buckley v. Ohio*, No. 5:19-cv-424, 2020 WL 5603768, at *8 (N.D. Ohio Aug. 18, 2020) (finding that a claim was futile and therefore procedurally defaulted when the petitioner hadn't filed a post-conviction petition to assert the claim, the time to file a post-conviction petition had passed, and the petitioner hadn't met any of the requirements in Ohio Revised Code § 2953.23(A)(1) for filing a late petition) (collecting cases), *report and recommendation adopted,* 2020 WL 5593099 (N.D. Ohio Sept. 18, 2020).

In his traverse, Johnson asserts that none of his grounds for relief are procedurally defaulted, and that, even if they are, he can show cause to excuse the procedural default. Doc. 11, at 1–3. He recites boilerplate law for what a petitioner must show to excuse a procedural default. *Id.* at 3–6. This boilerplate language includes a passage in which Johnson cites *Martinez v. Ryan*, 566 U.S. 1 (2012), and *Trevino v. Thaler*, 569 U.S. 413 (2013). *Id.* at 4–5. Johnson makes

no attempt to connect these cases to his procedural default of ground eight. Nevertheless, the Court, without finding that Johnson has properly argued this issue, will briefly address a potential argument regarding this issue.

Taken together, *Martinez* and *Trevino* say that where a state law requires a defendant to raise an ineffective-assistance-of-trial-counsel claim in an initial-review collateral proceeding, ineffective assistance of counsel—or not having counsel—in the collateral proceeding could serve as cause to excuse the procedural default of that claim. *See, e.g., White v. Warden, Ross Corr. Inst.*, 940 F.3d 270, 276 (6th Cir. 2019). But Johnson never filed a post-conviction petition. He therefore did not engage in an "initial-review collateral proceeding." So the *Martinez-Trevino* rule cannot save his procedural default of a purported ineffective-assistance claim in ground eight. *See Martinez*, 566 U.S. at 17 ("Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, *in the initial-review collateral proceeding*, there was no counsel or counsel in that proceeding was ineffective.") (emphasis added). Indeed, as the Third Circuit has explained:

> [The] failure to file a [state postconviction] petition cannot be excused by *Martinez* because [the petitioner] failed to initiate any state collateral review proceeding at all…. The Supreme Court was adamant that its holding in *Martinez* created a "limited" and "narrow" exception to the rule established in *Coleman [v. Thompson*]. 132 S.Ct. at 1315, 1319. Because the Court spoke only of

> applying its exception to an "initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel[,]" we conclude that the *Martinez* analysis is inapplicable where the criminal defendant did not initiate any state collateral review proceeding whatsoever. *Id.* at 1318. Were it otherwise, the *Martinez* rule could potentially apply to any defendant who failed to petition for state collateral review.

*Jones v. Pennsylvania Bd. of Probation and Parole*, 492 F. App'x. 242, 246–47 (3d Cir. 2012); *see also Hoes v. Gwin*, No. 2:24-cv-2106, 2024 WL 5250581, at *5–6 (W.D. Ark. Dec. 5, 2024) (collecting cases), *report and recommendation adopted*, 2024 WL 5246865 (W.D. Ark. Dec. 30, 2024); *Green v. Fram*, No. 3:18-cv-598, 2019 WL 3330393, at *5 (E.D. Va. July 24, 2019) (citing cases); *see also* Federal Habeas Manual, § 9B:62 (2026).

For all of the reasons explained above, ground eight, in all its potential variations, is procedurally defaulted.

**Conclusion**

For all the above reasons, the Court should deny Johnson's petition.

Dated: October 27, 2026

*/s/James E. Grimes Jr.*
James E. Grimes Jr.
U.S. Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais*, 928 F.3d 520, 530–31 (6th Cir. 2019).